UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CHARLES HOOVER**,                                      Case Number 1:14 CV 90

    Plaintiff,                                                         Magistrate Judge James R. Knepp II

    v.                                                                         MEMORANDUM OPINION AND
                                                                                 ORDER

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.

## INTRODUCTION

Plaintiff Charles Hoover filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The parties have consented to the exercise of jurisdiction by the undersigned in accordance with U.S.C. § 636(c) and Civil Rule 73. (Doc. 13). For the reasons given below, the Court affirms the Commissioner's decision denying benefits.

## PROCEDURAL BACKGROUND

On August 1, 2011, Plaintiff filed for DIB and SSI alleging disability since May 30, 2007. (Tr. 181-92). Plaintiff's claims were denied initially (Tr. 133-35, 136-38) and on reconsideration (Tr. 142-44, 145-47). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 148-49). On August 17, 2012, Plaintiff (represented by counsel) and a vocational expert ("VE") testified at the hearing, after which Plaintiff was found not disabled. (Tr. 5-22, 23-76). On November 15, 2013, the Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-7); 20 C.F.R.

§§ 404.955, 404.981, 416.1455, 416.1481. On January 14, 2014, Plaintiff filed the instant case. (Doc. 1).

**FACTUAL BACKGROUND**

*Personal and Vocational Background*

Born July 24, 1966, Plaintiff was 46 years old at the time of the hearing before the ALJ. (Tr. 23, 181). Plaintiff lived with his wife and two daughters, ages eight and eighteen. (Tr. 29). Plaintiff went to school until the tenth grade and subsequently obtained a GED. (Tr. 30). He has past work experience as an automobile painter for body shops, a car detailer, and he has also been responsible for maintaining outside accounts and keeping supplies stocked for one of the body shops. (Tr. 32-35).

In terms of activities of daily living, Plaintiff said on a normal day he was able to take a shower with help, eat, take medication, and watch TV. (Tr. 216). He said he was able to get dressed but needed help with his socks and shoes and that he could not cook for himself except for sandwiches or using the microwave. (Tr. 216-17). Plaintiff sometimes mowed the lawn but was unable to finish and needed his daughter to empty the bag and use the weed whacker. (Tr. 217). Plaintiff reported that he had a drivers' license and was able to drive. (Tr. 29-30). He attended Alcoholics Anonymous meetings once or twice a week and shopped with his wife. (Tr. 44-45, 218).

*Medical Evidence*

Plaintiff challenges only the ALJ's conclusions regarding his physical limitations (Doc. 16) and therefore waives any claims about the determinations of his mental impairments. *Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517-18 (6th Cir. 2010) (noting failure to raise a claim

2

in merits brief constitutes waiver). Accordingly, the undersigned addresses only the record evidence pertaining to his physical limitations.

Plaintiff's medical records indicate he suffered from lower back pain dating back to 2001. (Tr. 273). On May 30, 2007, Plaintiff left full time work due to his back pain. (Tr. 36). An MRI on November 20, 2007, revealed degenerative disc disease at the lower four lumbar levels, central and left paracentral disc herniation with an extruded fragment at the L3 level, and moderate associated canal stenosis. (Tr. 354-55). Plaintiff also had subligamentous central disc herniation at the L5 level without associated canal stenosis and varying degrees of neural foraminal encroachment, with the most significant findings at the L4 level. (Tr. 355).

On December 16, 2007, Pete Poolos, M.D., performed a lumbar laminectomy on Plaintiff after he was admitted through the emergency room due to a sudden worsening of pain radiating down his right leg. (Tr. 455). Plaintiff was discharged on December 21, 2007, and upon discharge, was able to ambulate comfortably and had pain controlled with Percocet. (Tr. 422).

Between December 2007 and January 2011, Plaintiff's medical record consisted largely of routine care visits with his primary care physician, Mohammed Shahed, M.D. (Tr. 253-60, 495-500). Except that on May 13, 2010, Plaintiff had an x-ray of the cervical spine which revealed C4/C5 spondylolisthesis and intervertebral disc space narrowing at the C3, C4, and C5 levels. (Tr. 364).

Plaintiff saw Dr. Shahed on January 26, 2011, for low back pain. (Tr. 322). Dr. Shahed prescribed Zanaflex and recommended Plaintiff lose twenty pounds. (Tr. 322).

On February 9, 2011, Plaintiff again saw Dr. Shahed complaining of lower back pain. (Tr. 253). Pain in the lumbar region radiating into the buttocks and thigh was noted along with

3

neck pain that radiated into the hands. (Tr. 253). Dr. Shahed ordered an MRI and prescribed pain medication. (Tr. 253).

An MRI on February 11, 2011, revealed persistent right paracentral disc herniation at the L3 level with nuclear extrusion and associated canal stenosis, central disc herniation at the L5 level that was somewhat more prominent than the 2007 study, and excess blood of the extruded fragment and adjacent L4 superior endplate. (Tr. 361).

A repeat lumbar laminectomy was performed by Dr. Poolos on February 24, 2011. (Tr. 424-25, 467-68). Dr. Poolos was unable to remove the herniation and Plaintiff's prognosis was guarded. (Tr. 424-25, 458). Dr. Poolos said Plaintiff was totally disabled from employment for the next three months, pending evaluation of his pain relief and post-operative recovery. (Tr. 468). Dr. Poolos gave an estimated return to work date of May 30, 2011 if things were otherwise normal. (Tr. 468). Following surgery, Plaintiff reported that his back and right groin pain were better but still complained of pain in his right buttock. (Tr. 466). Plaintiff's straight leg raising test had improved and he had good flexion in his feet. (Tr. 466).

At a post-operative visit on March 28, 2011, Dr. Poolos indicated that Plaintiff had gained some improvement and could flex his spine and touch his knees. (Tr. 465). However, Plaintiff was still in severe pain when he was not taking Percocet. (Tr. 465). Similar findings with some improvement were reported at a follow-up visit on April 13, 2011, and Dr. Poolos recommended Plaintiff start doing light exercises and continue taking pain medication. (Tr. 464).

In a letter dated June 1, 2011, Dr. Poolos reported that because Plaintiff's disc herniation could not be removed, he continued to have incapacitating pain in the right lower extremity and continued to rely on Percocet. (Tr. 463). Dr. Poolos opined that Plaintiff had been "totally

4

incapacitated since early February 2011 and [would] remain incapacitated for any work in the next twelve months." (Tr. 463).

In a letter to Dr. Shahed dated August 24, 2011, Dr. Poolos reported that Plaintiff was having continued pain but his straight leg test was without radicular pain in the sitting position and flexion and extension did not cause radicular pain. (Tr. 458). Dr. Poolos said Plaintiff's most recent MRI indicated that the residual disk fragment had gotten smaller since the February MRI indicating Plaintiff should be having less pain. (Tr. 458). Plaintiff had complained of lower leg and testicular pain and Dr. Poolos thought this might be due to central and right paracentral disc herniation at L5-S1 that would not cause significant stenosis of the spine but might account for his other pain. (Tr. 459).

On September 21, 2011, state agency physician Gerald Klyop, M.D., reviewed Plaintiff's medical record and opined that Plaintiff could lift/carry up to ten pounds frequently and up to twenty pounds occasionally. (Tr. 84-86). Plaintiff could stand/walk for four hours in an eight-hour workday and sit for about six hours in an eight-hour workday. (Tr. 85). Dr. Klyop explained that Plaintiff's walking/standing limitations were due to ongoing pain in his right, lower extremity and that although Plaintiff had no radicular symptoms while sitting or with flexion or extension of the back, doctors' notes indicated possible nerve damage due to the herniated disc. (Tr. 85). Dr. Klyop opined that with his pain, Plaintiff could occasionally climb ramps or stairs but never climb ladders, ropes, or scaffolds; could frequently balance; and could stoop, kneel, crouch, and crawl occasionally. (Tr. 85).

Plaintiff was involved in a car accident on December 22, 2011, which caused him to develop pain in his left wrist, left shoulder, and lower back in the low lumbosacral area. (Tr. 505). By February 8, 2012, Plaintiff's shoulder and wrist pain had improved but his low back

5

pain including, at times, pain radiating into the right testicle and down the right leg, continued. (Tr. 505). Plaintiff maintained the ability to elevate either leg without pain and maintained good flexion in the feet. (Tr. 506). Dr. Poolos recommended that Plaintiff get an MRI to determine whether the car accident had aggravated his back problems. (Tr. 506-507). Plaintiff had this MRI on March 19, 2012 and Dr. Poolos concluded there had not been any change in Plaintiff's disc herniations and protrusions due to the accident. (Tr. 504).

**Plaintiff's Testimony**

Plaintiff testified that he could not work because of major pain across his lower back that shot down his legs. (Tr. 38). Plaintiff said this pain was six or seven on a ten-point scale when he was merely sitting and got worse with physical activity. (Tr. 38-39, 43). Plaintiff testified this pain became constant after his February 2011 surgery. (Tr. 39-39). He testified that he was not taking any narcotic pain relief, but did take Neurontin, which is a muscle relaxer, and Aleve or ibuprofen. (Tr. 39-40). Plaintiff said he had taken Percocet which reduced his pain to around five on a ten point scale. (Tr. 41).

Plaintiff testified he was active for about four hours per day and he was sitting or lying down the rest of the time. (Plaintiff later stated that he needed to lie down up to four hours per day.) (Tr. 46, 48). Plaintiff said he could sit between fifteen minutes and an hour before he began to have difficulty and the most he would lift was ten pounds but he was leery of even carrying that much weight. (Tr. 47-49). Plaintiff further testified he typically walked around with a cane, although it was not clear if the cane was prescribed. (Tr. 53).

*ALJ's Decision*

On September 26, 2012, the ALJ found Plaintiff had the severe impairments of degenerative disc disease of the cervical and lumbar spine and major depressive disorder but that

these impairments did not meet or equal a listing. (Tr. 10-12). The ALJ then found Plaintiff had the RFC to perform sedentary work with the additional limitations that he could only frequently balance; he could not climb ladders, ropes, or scaffolds; he could only occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs; he must have the option to shift between sitting and standing every hour; and he required the use of a cane for ambulation. (Tr. 12). Plaintiff could perform simple or more complex tasks in an environment that does not require frequent changes; Plaintiff was precluded from working jobs with strict production quotas or fast-paced work environments; but could interact with the general public, co-workers, and supervisors on a frequent basis; and would be off task five percent of the workday. (Tr. 12).

Next, the ALJ found, based on VE testimony, that Plaintiff could perform work as an inspector, bonder, and touch-up screener; hence, he was not disabled. (Tr. 17-18).

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court

cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for DIB and SSI is predicated on the existence of a disability. 42 U.S.C. §§ 423(a); § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. §§ 404.1520 and 416.920 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and

8

meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff argues the ALJ erred: (1) in finding that Plaintiff's testimony was not fully credible; (2) because his RFC finding was not supported by substantial evidence; and (3) in assigning weight to his treating neurosurgeon, Dr. Poolos. (Doc. 16, at 12-17). Each of these arguments will be addressed in turn.

*Plaintiff's Credibility*

Plaintiff argues the ALJ erred by giving invalid reasons for rejecting his credibility with respect to the severity of his pain. (Doc. 16, at 12).

An ALJ is not bound to accept as credible Plaintiff's testimony regarding symptoms. *Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992). Analysis of alleged disabling symptoms turns on credibility. *See Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 726-27 (6th Cir. 2004). "Because of their subjective characteristics and the absence of any reliable techniques for measurement, symptoms (especially pain) are difficult to prove, disprove, or quantify." SSR 82-58, 1982 WL 31378, *1. In evaluating credibility, an ALJ considers certain factors:

> (i) [A claimant's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [a claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [] pain or other symptoms;
>
> (v) Treatment, other than medication, [a claimant] receive[s] or ha[s] received for relief of [] pain or other symptoms;

9

> (vi) Any measures [the claimant] ha[s] used to relieve pain or other symptoms; and
>
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

A claimant's subjective complaints can support a claim for disability, but there must also be objective medical evidence in the record of an underlying medical condition. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). Further, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476 (citations omitted). On review, the Court is to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Id.* (citation omitted). Still, an ALJ's decision to discount a claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling (SSR) 96-7p, 1996 WL 374186, *2. In reviewing an ALJ's credibility determination, the Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [Plaintiff's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476.

The crux of Plaintiff's argument is the ALJ's reasons for rejecting his testimony were cherry-picked from the medical evidence. Plaintiff specifically takes issue with the ALJ using his negative straight-leg raising test as reason to doubt the severity of his pain. (Doc. 16, at 15). Plaintiff argues the fact that "he was not free from radicular symptoms…[and had] testicular

pain, which Dr. Poolos noted could be related to an S1 nerve root impingement" proves that his pain was severe despite the negative leg raising test. (Doc. 16, at 15).

However, the ALJ did not discount Plaintiff's pain in its entirety, rather, he discounted that it was severe enough to render the Plaintiff totally disabled. The negative straight leg test was just one of many factors the ALJ used in determining Plaintiff's credibility. The ALJ considered that although objective medical evidence supported limits in Plaintiff's ability to walk, lift, sit, and stand, it did not show loss of bowel control or bladder incontinence and he had normal gait, motor strength, sensation, and reflexes indicating he could perform some work. (Tr. 15). The ALJ also gave weight to Plaintiff's statements that he required a cane and put this restriction in the RFC despite the fact it was unclear this was medically necessary. (Tr. 15, 53). Further, in terms of activities of daily living, Plaintiff was able to drive and perform light household chores which, the ALJ notes, is inconsistent with not being able to perform sedentary work. (Tr. 15, 29-30, 216-17).

Plaintiff also alleges the ALJ mischaracterized his August 2011 MRI results by stating that the L3-4 disc herniation was shrinking when in fact it had not. (Doc. 16, at 15). Plaintiff argues this was presumably a consequence of his lumbar laminectomy. (Doc. 16, at 15). However, in his letter dated August 24, 2011 to Dr. Shahed, Dr. Poolos states that although Plaintiff had some residual disc fragment, "when comparing it with the MRI in early 2011 that piece is much smaller indicating that hopefully he should be having less pain." (Tr. 458). Therefore, the ALJ accurately concluded that Plaintiff's August 2011 MRI had shown that the disc fragment was smaller and was justified in relying on it, in part, to determine the severity of Plaintiff's symptoms.

In sum, the ALJ appropriately weighed Plaintiff's pain credibility based on substantial evidence, namely, other objective medical evidence and Plaintiff's ability to participate in daily activities. Therefore, the ALJ's determination of the credibility of Plaintiff's statements is affirmed.

*The ALJ's RFC Assessment*

Plaintiff further argues the ALJ erred because he failed to account for his testimony that he was required to lie down several times throughout the day and for Plaintiff's neck pain in his RFC assessment. (Doc. 16, at 12-13).

A claimant's RFC is an assessment of "the most he can still do despite his limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. *Id.*, at § 416.929. An ALJ must also consider and weigh medical opinions. *Id.*, at § 416.927. When a claimant's statements about symptoms are not substantiated by objective medical evidence, the ALJ must make a finding regarding the credibility of the statements based on consideration of the entire record. SSR 96-7p, 1996 WL 374186, *1. The Court may not "try the case de novo, nor resolve conflicts in evidence". *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).

Here, although Plaintiff argues the ALJ failed to take into account that he was required to lie down throughout the day. Plaintiff points to no objective medical evidence indicating this need. Further, there is no record of Plaintiff ever telling a doctor about this restriction. The only evidence was Plaintiff's own testimony which the ALJ already determined was less than completely credible. Moreover, the ALJ accommodated Plaintiff's need to switch positions in his RFC finding. (Tr. 12).

Further, with respect to Plaintiff's disc herniations in his neck, although he argues the

ALJ did not include "limitations on the use of Plaintiff's neck or upper extremities," in his RFC (Doc. 16, at 13), the ALJ did in fact limit Plaintiff to sedentary work that did not involve climbing ropes, ladders, or scaffolds (Tr. 12).

Plaintiff argues the ALJ was required "to address the extent to which the neck was contributing to Plaintiff's complaints, including the problems he was having with the use of his arms." (Doc. 16, at 13). However, an ALJ is not required to discuss every piece of evidence in the record. *Kornecky v. Comm'r*, 167 F. App'x 496, 507-08 (6th Cir. 2006). Plaintiff does not offer any suggestion as to what limitations he does have in his arms due to his neck pain, hence it's not clear how the RFC does not adequately accommodate Plaintiff's neck pain. Further, although there is evidence of disc narrowing in the cervical spine, these changes were described as mild to moderate and there is no medical opinion on their specific effects. (Tr. 364).

In sum, there was no objective evidence Plaintiff needed to lie down throughout the day, there was no evidence of how Plaintiff's neck pain limited him beyond the restrictions already in place in the RFC, and Plaintiff's own testimony was found to be less then credible. Therefore, the ALJ did not err in not including additional limitations in Plaintiff's RFC.

*Treating Physician Rule*

Additionally, Plaintiff argues the ALJ erred in not giving appropriate weight to his treating neurosurgeon, Dr. Poolos' opinion, that he had been "totally incapacitated since early February 2011 and [would] remain incapacitated for any work for the next 12 months". (Doc. 16, at 17).

Generally, the medical opinions of treating physicians are afforded greater deference than those of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188. "Because treating physicians are 'the medical

13

professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)). A treating physician's opinion is given "controlling weight" if it is supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Id.* The ALJ must give "good reasons" for the weight given to a treating physician's opinion. *Id.* A failure to follow this procedural requirement "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Id.* (citing *Rogers*, 486 F.3d at 243). Accordingly, failure to give good reasons requires remand. *Id.* at 409–410.

"Good reasons" are reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *4). "Good reasons" are required even when the conclusion of the ALJ may be justified based on the record as a whole. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

"If the ALJ does not accord the opinion of the treating source controlling weight, it must apply certain factors" to assign weight to the opinion. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id.*

The ALJ evaluated Dr. Poolos' opinion as follows:

> The undersigned has also considered the opinion of the treating neurosurgeon, Dr. Poolos, who indicated on June 1, 2011, that the claimant had been "totally incapacitated since early February 2011" and would be unable to perform any work for the next 12 months. (Exhibit 6F, p.1). The undersigned can give little weight to this treating source opinion, for many reasons. The issue of disability is reserved to the Commissioner and this opinion fails to state any of the claimant's specific work-related limitations. The physician offered this opinion only a few months after the claimant's most recent back surgery, and subsequent records from Dr. Poolos indicate that the claimant experienced significant improvement in range of motion and radicular pain by August 24, 2011. (Exhibit 7F, p.2). Overall, the weight of the objective medical evidence, which indicated findings that returned to baseline only a few months after surgery, does not support the treating physician's assertion that the claimant was unable to perform any work activity.

(Tr. 15).

First, Plaintiff argues that Dr. Poolos' opinion is a medical opinion that Plaintiff was not able to work during the specified period and that it did not contain any specific limitations on his ability to work because he was not able to work "*under any set of restrictions or limitations*." (Doc. 16, at 18) (emphasis in original). However, this point is not well-taken. The regulations are clear a statement that a claimant is "disabled" or "unable to work" is not a medical opinion which is entitled to deference. 20 C.F.R. § 404.1527 (d) (1), (3) *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) ("no special significance will be given to opinions of disability even if they come from a treating physician). Dr. Poolos' opinion that Plaintiff could not work under any circumstances, is not a valid substitute for detailing his medical findings and the specific tasks Plaintiff was unable to perform.

However, even when a treating physician's opinion is not entitled to deference because it is conclusory, an ALJ is still required to "explain the consideration given to the treating source's opinion(s)." *Dawson v. Astrue*, 2014 WL 1338691, *3 (E.D. Kentucky) quoting *Bass*, 499 F. 3d at 511. Here, the ALJ properly explained that he gave little weight to Dr. Poolos opinion because it contained a conclusory statement that Plaintiff could not work; the opinion was offered only a

15

few months following surgery; and Plaintiff subsequently continued to make significant improvements indicating, at a minimum, it was too early for Dr. Poolos to have determined Plaintiff would not have the ability to work for such a lengthy period. (Tr. 15).

Second, Plaintiff contends his range of motion and radicular pain had not improved. (Doc. 16, at 18). However, the record indicates Plaintiff's straight leg raising test caused him "some pain" in his right buttock in April 2011 but was subsequently "without any radicular pain in the sitting position" in August, thereby indicating some improvement. (Tr. 461, 464).

Third, Plaintiff argues the ALJ failed to consider his treatment history in evaluating Dr. Poolos' opinion. (Doc. 16, at 19). However, the ALJ did consider all of Plaintiff's surgical and treatment history in assessing his RFC. *See* (Tr. 14). Therefore, substantial evidence supports the ALJ's decision to assign little weight to Dr. Poolos' opinion.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the Court finds the Commissioner's decision denying DIB and SSI applied the correct legal standards and is supported by substantial evidence. Therefore, the decision of the Commissioner is affirmed.

IT IS SO ORDERED.

s/James R. Knepp, II  
United States Magistrate Judge
